# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

FILED 07 DEC 13 PM 12:21
CLERK U.S. DISTRICT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

## ARREST ON OUT-OF-DISTRICT OFFENSE

07 MJ 2891

CASE NUMBER: _____

The person charged as <u>ORTIZ, Carmen</u> now appears before this United States District Court for an initial appearance as a result of the following charges having been filed in the United States District Court for the <u>Southern</u> District of <u>New York</u> on <u>11/15/07</u> with <u>Title 21 USC 846,</u> in violation of:

**Narcotics Trafficking Conspiracy**

The charging documents and the warrant for the arrest of the defendant which was issued by the above United States District Court are attached hereto.

I hereby swear under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

DATED: <u>12/13/07</u>

_____
Kevin Bolles
CI - Deputy United States Marshal

Reviewed and Approved

DATE: 12/13/07

_____
Assistant United States Attorney

*M/P*

AUSA Amy Finzi - (212) 637-2338
AUSA Glen McGorty - (212) 637-2505

CR 12 (Rev. 6/82)

## WARRANT FOR ARREST

| United States District Court | DISTRICT<br>SOUTHERN DISTRICT OF NEW YORK |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>CARMEN ORTIZ | DOCKET NO.  07 MAG   MAGISTRATE CASE NO. 1907 |
| | NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED<br>CARMEN ORTIZ |
| WARRANT ISSUED ON THE BASIS OF:  ☐ Order of Court<br>☐ Indictment   ☐ Information   X Complaint | DISTRICT OF ARREST |
| TO:<br>ANY AUTHORIZED FEDERAL LAW ENFORCEMENT OFFICER | CITY |

YOU ARE HEREBY COMMANDED to arrest the above-named person and bring that person before the United States District Court to answer to the charge(s) listed below.

### DESCRIPTION OF CHARGES

Narcotics Trafficking Conspiracy

| IN VIOLATION OF | UNITED STATES CODE TITLE<br>21 | SECTION<br>846 |
|---|---|---|
| | BAIL | OTHER CONDITIONS OF RELEASE |
| ORDERED BY  DEBRA FREEMAN<br>UNITED STATES MAGISTRATE JUDGE<br>SOUTHERN DISTRICT OF NEW YORK | SIGNATURE (FEDERAL JUDGE/U.S. MAGISTRATE) | DATE ORDERED<br>NOV 1 5 2007 |
| CLERK OF COURT | (BY) DEPUTY CLERK | DATE ISSUED |

### RETURN

This warrant was received and executed with the arrest of the above-named person.

| DATE RECEIVED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |
|---|---|---|
| DATE EXECUTED | | |

Note: The arresting officer is directed to serve the attached copy of the charge on the defendant at the time this warrant is executed.

**07 MAG   1907**   ORIGINAL

Approved: _____
JEFFREY A. BROWN/ARLO DEVLIN-BROWN
Assistant United States Attorneys

Before:  HONORABLE DEBRA FREEMAN
         United States Magistrate Judge
         Southern District of New York

- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :    COMPLAINT

            - v. -                  :    Violation of
                                         21 U.S.C. § 846
OSCAR DOMINGUEZ,                    :
AARON HIGUERA,                           COUNTY OF OFFENSE:
CARMEN ORTIZ, and                   :    BRONX
JOSE VIDAL,
                                    :
            Defendants.
                                    :
- - - - - - - - - - - - - - - - - - - x

STATE OF NEW YORK         )
COUNTY OF NEW YORK        ) ss.:
SOUTHERN DISTRICT OF NEW YORK )

   JOHN BARRY, being duly sworn, deposes and says that he is a Detective with the New York City Police Department and is assigned to the New York Drug Enforcement Task Force (the "Task Force"), and charges as follows:

   1. From in or about June 2007, up to and including the present, in the Southern District of New York and elsewhere, OSCAR DOMINGUEZ, AARON HIGUERA, CARMEN ORTIZ, and JOSE VIDAL, the defendants, and others known and unknown, unlawfully, intentionally and knowingly did combine, conspire, confederate and agree together and with each other to violate the narcotics laws of the United States.

   2. It was a part and an object of such conspiracy that OSCAR DOMINGUEZ, AARON HIGUERA, CARMEN ORTIZ, and JOSE VIDAL, the defendants, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, to wit, 5 kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Sections 812, 841(a)(1) and 841(b)(1)(A) of Title 21, United States Code.

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

3.  I am a Detective with the NYPD where I have been employed for approximately 17 years. I have been assigned to the Task Force for approximately 4 years. While with the NYPD and the Task Force, I have participated in investigations of drug trafficking involving the importation, distribution and possession of narcotics, including cocaine. I am familiar with the facts and circumstances set forth below from my participation in the investigation of this case, from my personal knowledge and from my conversations with other law enforcement agents. Because this affidavit is being submitted for the limited purpose of establishing probable cause to arrest OSCAR DOMINGUEZ and AARON HIGUERA, the defendants, I have not included every fact I have learned during the investigation. Where the actions, statements and conversations of others are recounted herein, they are related in substance and in part, unless otherwise indicated.

4.  On or about July 11, 2007, other members of the Task Force and I were conducting surveillance in the vicinity of Putnam Avenue in Norwalk, Connecticut. The previous day, I had been informed by a confidential informant ("CI-1")[1] posing as a purchaser of narcotics, that he had been contacted by OSCAR DOMINGUEZ, the defendant, and that DOMINGUEZ had given CI-1's cellphone number to an individual transporting a load of cocaine to the New York Metropolitan area – who was subsequently arrested, identified as Julio Cesar Vizcarra, and charged in a narcotics distribution conspiracy in this district – ostensibly for delivery to CI-1 and another confidential informant posing as a narcotics purchaser ("CI-2").[2] Subsequently, CI-1 received numerous telephone calls from Vizcarra directing CI-1 and CI-2 to meet him in the vicinity of Putnam Avenue.

---

[1] CI-1 has provided reliable and independently corroborated information in the past which has led to the arrest of over fifty individuals and the seizure of more than 2.5 tons of cocaine.

[2] CI-2 has provided reliable and independently corroborated information in the past which has led to the arrest of multiple individuals and the seizure of approximately ten kilograms of cocaine.

2

5. During the course of my surveillance, I observed the following:

a. When I and other agents arrived at Putnam Avenue, I observed a blue and white tractor-trailer parked on the side of the road. The area was residential, and there were no commercial businesses in the vicinity. I observed CI-2 converse briefly with Vizcarra. CI-2 then returned to his vehicle, during which time Vizcarra opened the back of the tractor-trailer.

b. Other agents and I approached the rear of Vizcarra's vehicle and observed a closed black duffel bag next to the door and, immediately behind the bag, approximately twelve brick-shaped objects. The objects were wrapped in brown tape, and under clear vacuum-sealed plastic wrap. The black duffel bag was found to contain eighteen similar bricks, all of which were subsequently tested by the DEA laboratory and found to contain cocaine. The bricks in aggregate contained approximately thirty kilograms of cocaine.

6. Thereafter, I arranged for CI-2 to place monitored telephone calls to OSCAR DOMINGUEZ, the defendant, and others.

a. On or about July 16, 2007 CI-2 called OSCAR DOMINGUEZ, the defendant, at telephone number 240-543-9561.[3] During the conversation, CI-2 told DOMINGUEZ that he/she had gotten the "paperwork" related to the arrest of the transporter and the seizure of 30 kilograms of cocaine. DOMINGUEZ then told CI-2 to call the source of supply in Mexico and let him know about the arrest and to inform the source of supply that DOMINGUEZ was willing to pledge some property in the Dominican Republic to the source of supply to pay for the seized narcotics shipment so that DOMINGUEZ could receive additional shipments of cocaine.

b. On July 16, 2007, a few minutes after the foregoing call was terminated, CI-2 called a co-conspirator not named herein ("CC-1"). I recorded the conversation. During the conversation, CI-2 told CC-1 that he/she had the paperwork related to the arrest of the transporter and was availabe to help CC-1 with what ever he needs in New York City. CC-1 responded that he could not believe this happened on the first trip.

---

[3] At the time of his arrest on November 14, 2007, DOMINGUEZ provided the same telephone number - 240-543-9561 - as his contact telephone number when providing his pedigree information to agents.

3

c.  On July 16, 2007, a few minutes after the foregoing call was terminated, CI-2 called DOMINGUEZ, and explained that he/she had provided CC-1 with the information DOMINGUEZ had requested he/she provide.

d.  On or about July 18, 2007, CI-2 called DOMINGUEZ. I recorded the conversation. During the conversation, DOMINGUEZ informed CI-2 that he would be coming to New York City that day or the next day.

e.  On or about July 30, 2007, CI-2 called DOMINGUEZ and told DOMINGUEZ that CI-2 had been waiting for DOMINGUEZ to call. I recorded the conversation. DOMINGUEZ responded that he had made a mistake, and that the Mexican transporters of the load of cocaine had only recently left Mexico en route to New York City.

7.  According to CI-2, on or about September 3, 2007, CI-2 met with OSCAR DOMINGUEZ, the defendant, to discuss DOMINGUEZ's pending receipt of a load of approximately 100 kilograms of cocaine in New York City.

8.  According to CI-2, on or about September 5, 2007, at the direction of OSCAR DOMINGUEZ, the defendant, CS-2 purchased two Sprint Nextel prepaid cellphones so that DOMINGUEZ and AARON HIGUERA, the defendant, a representative of the Mexican source of supply, who was in New York City at the time, could discuss arrangements for collecting the proceeds from the 100 kilogram shipment, which CI-2 did. During the meeting at which CI-2 delivered the phones to DOMINGUEZ and HIGUERA, HIGUERA stated that DOMINGUEZ would get "100" (which CI-2 understood to be 100 kilograms of cocaine) and that another customer of HIGUERA would receive "200" (which CI-2 understood to be 200 kilograms of cocaine). Later that day, CI-2 met with DOMINGUEZ, who told CI-2 that the "work" (the cocaine) had arrived.

9.  According to CI-2, on or about September 6, 2007, OSCAR DOMINGUEZ, the defendant, directed CI-2 to obtain an apartment and a money counting machine so that DOMINGUEZ could count the proceeds from the sale of the 100 kilograms for eventual payment to AARON HIGUERA, the defendant. DOMINGUEZ said that he planned to deliver the money to HIGUERA on September 10, 2007 or September 11, 2007. CI-2 obtained the requested apartment, and provided DOMINGUEZ with a money counting machine on September 10, 2007.

10. According to CI-2, on or about September 9, 2007, CI-2 was present while AARON HIGUERA, the defendant, called OSCAR DOMINGUEZ, the defendant. During the conversation, both sides of which the CI-2 heard because it was a "point-to-point" or

"direct-connect" conversation, DOMINGUEZ told HIGUERA, in substance, that something would take place the next day. After the call ended, HIGUERA told CI-2 that they would be busy picking up the money the next day, and that the people "over there" (which CI-2 understood to refer to Mexico) were pushing HIGUERA to deliver the money.

11. On or about September 11, 2007, I and other agents surveilled AARON HIGUERA, the defendant, and CARMEN ORTIZ, the defendant, as they checked out of the hotel, left their luggage with the concierge, and walked in the neighborhood of the hotel. After terminating surveillance in the early afternoon, I returned to the hotel and subsequently confirmed with hotel personnel that HIGUERA and ORTIZ had retrieved their luggage and checked back into the hotel, in a different room.

12. According to CI-2, later on September 11, 2007, OSCAR DOMINGUEZ, the defendant, told CI-2 that he had not yet collected all of the proceeds of the sale of the load of cocaine because instead of selling large amounts to few buyers he had sold smaller amounts to many buyers. DOMINGUEZ relayed to CI-2 that he had offered to pay AARON HIGUERA, the defendant, some part of the proceeds that day, but that HIGUERA had refused and would wait to be paid all of the money at one time.

13. On September 11, 2007, I and other agents conducted simultaneous surveillance at 2275 Barker Avenue in the Bronx and at the location of the hotel in Manhattan where AARON HIGUERA, the defendant, and CARMEN ORTIZ, the defendant, had been staying (the "Hotel"). While conducting the surveillance, I and other agents observed the following:

a. At approximately 6:00 p.m., CI-2, driving a grey SUV, pulled up to the Hotel, and HIGUERA and ORTIZ entered the SUV. CI-2 drove the SUV to 2275 Barker Avenue, and he, HIGUERA and ORTIZ entered 2275 Barker Avenue. According to CI-2, while they were inside the Barker Avenue location, he, HIGUERA and ORTIZ helped to count the narcotics proceeds being stored at that location.

b. At approximately 8:00 p.m., agents and I observed OSCAR DOMINGUEZ, the defendant, and an individual subsequently identified as JOSE VIDAL, the defendant, arrive at the 2275 Barker Avenue location in a red car and enter the building. Approximately thirty minutes later, DOMINGUEZ and VIDAL exited the building, entered the red car, and drove away.

c.  At approximately 10:00 p.m., I observed VIDAL return to 2275 Barker Avenue, enter the building, and subsequently exit approximately ten minutes later. Another ten minutes later, VIDAL returned to the building, this time carrying a black duffel bag over his shoulder, which CI-2 later informed me contained money.

d.  At approximately 11:30, I observed CI-2, VIDAL, HIGUERA, and ORTIZ exit the Barker Avenue location. CI-2 was rolling a large black suitcase, which he placed in the SUV. CI-2, HIGUERA and ORTIZ then entered the SUV and drove away.

e.  I and other agents re-commenced surveillance of the SUV at approximately 12:00 a.m. at the Vince Lombardi Service Area in New Jersey. The SUV circled the parking lot of the Service Area multiple times - at which time neither I nor any other agent was able to maintain surveillance - and eventually parked next to the red car previously driven by VIDAL. The occupants of both vehicles - VIDAL and DOMINGUEZ in the red car and CI-2, HIGUERA and ORTIZ in the grey SUV - exited and entered the lobby of the Service Area.

f.  I observed DOMINGUEZ and HIGUERA speaking in the lobby in Spanish. Subsequently, DOMINGUEZ, VIDAL, HIGUERA and ORTIZ exited the lobby, entered the red car, and drove away. CI-2 exited the lobby, entered the SUV, and also drove away.

15.  According to CI-2, during the time that the SUV was circling the service area and I and other agents were not able to maintain surveillance, HIGUERA transferred the suitcase of narcotics proceeds to a tractor-trailer driver waiting on the Service Area exit road, which doubles as the on-ramp to the highway, who immediately drove away onto the highway.

WHEREFORE, deponent prays that OSCAR DOMINGUEZ, AARON HIGUERA, JOSE VIDAL, and CARMEN ORTIZ, the defendants, be arrested and imprisoned or bailed as the case may be.

JOHN BARRY
Detective
New York City Police Department

Sworn to before me this
15th day of November, 2007

HONORABLE DEBRA FREEMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK